# In the United States Court of Federal Claims

No. 19-187

Filed: June 28, 2019

Reissued: July 9, 2019[1]

|  |  |  |
|---|---|---|
| ) | | |

TELOS IDENTITY MANAGEMENT )
SOLUTIONS, LLC, )
)
        Plaintiff, )
)
v. )
)
THE UNITED STATES, )
)
        Defendant, )
)
    and )
)
IDEMIA IDENTITY & SECURITY )
USA, LLC, )
)
        Defendant-Intervenor. )

Post-Award Bid Protest; Judgment on the
Administrative Record

*Katherine Baur Burrows* and *Nathanael D. Hartland*, Nelson Mullins Riley & Scarborough LLP, Washington, DC, for plaintiff.

*Ashely Akers*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*Damien Clemens Specht*, Morrison & Foerster, LLP, McLean, VA, for defendant-intervenor.

## OPINION AND ORDER

*SMITH*, **Senior Judge**

        This post-award bid protest comes before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. Plaintiff, Telos Identity Management Solutions, LLC ("Telos"), filed its Complaint on February 1, 2019, objecting to the United States Department of Homeland Security, Transportation Services Administration's ("TSA" or "Agency") evaluation of proposals under Solicitation No. 70T02018R9NOIA073 ("Solicitation"). *See generally* Complaint (hereinafter "Compl."). Plaintiff further objects to the subsequent award of an Indefinite Delivery Indefinite Quantity ("IDIQ") contract to defendant-intervenor, Idemia

---

[1]     An unredacted version of this opinion was issued under seal on June 28, 2019. The parties were given an opportunity to propose redactions, but no such proposals were made.

Identity & Security USA LLC ("Idemia").  *Id.*  Plaintiff asks this Court: (1) to grant its Motion for Judgment on the Administrative Record and for Permanent Injunction; (2) enjoin TSA from proceeding with the IDIQ Contract and Idemia from performing thereunder; (3) issue a new solicitation or amend Solicitation to comply with the TSA Act; (4) issue a new source selection decision or, alternatively, award a second IDIQ contract to Telos pursuant to the FAR; and (5) deny defendant and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record.  *See* Plaintiff's Reply in Support of its Motion for Judgment on the Administrative Record and for a Permanent Injunction; Reply in Opposition to Defendants' Cross Motions for Judgment on the Administrative Record (hereinafter "Pl.'s Reply") at 20.  For the following reasons, plaintiff's Motion for Judgment on the Administrative Record is denied, and defendant and defendant-intervenors' Cross-Motions for Judgment on the Administrative Record are granted.

## I.      Background

On March 7, 2018, the Agency issued the Solicitation for the TSA Universal Enrollment Services ("UES").  Administrative Record Tab (hereinafter "AR") 36, AR 56 at 5027.  The Solicitation sought to award a single IDIQ contract[2] that would provide "enrollment services for programs, populations, initiatives or functions required, authorized, serviced by, or partnered with TSA."  AR 38.1 at 2224.  This Solicitation contemplated a follow-on contract to the 2012 "UES contract" (HSTS02-12-C-TTC702), which sought to provide a full suite of enrollment services inclusive of all enrollment technology and operations infrastructure for its security threat assessment programs.  AR 27 at 584, AR 56 at 5025–26.  The original UES contract expired in September 2017, and TSA has been operating under a bridge contract with Idemia to maintain those services during reprocurement.  *Id.*

The anticipated IDIQ contract included a three-year base period, with a potential for a ten-year period of performance, which consisted of a three-year base period, two (two-year) options, and three (one-year) options.  AR 36 at 822.  The Solicitation also sought to issue a contemporaneous Task Order ("Task Order 1") with a potential for a ten-year period of performance, that mirrored the performance breakdown of the anticipated IDIQ contract.  AR 40 at 2481–82.  Proposals were to be submitted in the following six volumes: (1) Cover Letter, Tables of Contents, Executive Summary; (2) Direct Channeler Requirement; (3) Management and Implementation Approach and Capabilities; (4) Technical Approach and Capabilities; (5) Past Performance; and (6) Price and Labor Rates.  AR 36 at 917–25.  The Solicitation indicated that the Agency would issue a "single-award contract to the responsive and responsible firm whose proposal demonstrates the best value to the Government, price and non-price factors considered."  AR 36 at 927.

---

[2]      There exists a dispute between the parties as to whether the Solicitation indicated an intent on the part of the TSA to make a single award, and whether a single award violates the TSA Modernization Act of 2018 (the "TSA Act").  For the reasons set forth in the discussion section of this opinion, the facts reflected herein assume the Agency's intent was to make a single award.

The Agency received four proposals in response to the UES Solicitation. *See generally* AR 41, AR 42, AR 43, AR 44. TSA evaluated those proposals from April to mid-September 2018. AR 45–49. Congress enacted the TSA Act, Pub. L. No. 115–254, §§ 1901 *et seq.*, on October 5, 2018. On January 7, 2019, the TSA issued the notice of contract award to Idemia. AR 59 at 6870–71.

On February 1, 2018, Telos filed its Complaint. *See generally* Complaint. At the request of the parties, the Court remanded the case to the Agency. *See* Order, ECF No. 27. On March 15, 2019, after the parties failed to resolve the dispute after remand to the Agency, plaintiff filed its Amended Complaint. *See generally* Am. Compl. In its Amended Complaint, plaintiff alleged ten Counts. *See generally id.* However, during the course of litigation, plaintiff abandoned all but the following two counts: (1) the Agency's award to Idemia violates the TSA Modernization Act, and (2) the Agency's decision to make a single award to Idemia was irrational and in violation of law, statute, or regulation. *See id.* at 28, 36. On April 12, 2014, plaintiff filed its Motion for Judgment on the Administrative Record. *See generally* Plaintiff's Motion for Judgment on the Administrative Record and for a Permanent Injunction (hereinafter "Pl.'s MJAR"). On May 10, 2019, defendant filed its Cross-Motion for Judgment on the Administrative Record. *See generally* Defendant's Cross Motion for Judgment on the Administrative Record and Response to Plaintiff's Motion for Judgment on the Administrative Record (hereinafter "Def.'s CMJAR"). Additionally, on May 10, 2019, defendant-intervenor filed its Cross-Motion for Judgment on the Administrative Record. *See generally* Defendant-Intervenor Idemia Identity & Security USA, LLC's Response and Motion for Judgment on the Administrative Record (hereinafter "Def.-Int.'s CMJAR").

On May 27, 2019, plaintiff filed its Response to defendant and defendant-intervenors' Cross-Motions for Judgment on the Administrative Record and Reply in Support of its Motion for Judgment on the Administrative Record. *See* Pl.'s Reply. On June 13, 2019, defendant filed its Reply in Support of its Cross-Motion for Judgment Upon the Administrative Record. *See generally* Defendant's Reply in Support of its Cross Motion for Judgment on the Administrative Record and Reply in Opposition to Plaintiff's Motion for Judgment on the Administrative Record (hereinafter "Def.'s Reply"). Also, on June 13, 2019, defendant-intervenor filed its Reply in Support of its Motion for Judgment on the Administrative Record. *See generally* Idemia Identity & Security USA, LLC's Reply in Support of its Motion for Judgment on the Administrative Record (hereinafter "Def.-Int.'s Reply"). The Court held oral argument on this matter on June 21, 2019. The parties' motions are fully briefed and ripe for review.

## II.   Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims with the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, to fall within the scope of the Tucker Act, "a plaintiff

must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

The Tucker Act also affords this Court with jurisdiction over bid protest actions. 28 U.S.C. § 1491(b). This Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for agency actions. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Notably, agency procurement actions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 28 U.S.C. § 1491(b)(4). Moreover, "[t]he arbitrary and capricious standard applicable [in bid protests] is highly deferential." *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). Agencies, and contracting officers in particular, are "'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (quoting *Impresa*, 238 F.3d at 1332).

Under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), a party may file a motion for judgment upon the administrative record for the Court to assess whether an administrative body, given all disputed and undisputed facts in the record, acted in compliance with the legal standards governing the decision under review. *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 585 (2006)). On a motion for judgment upon the administrative record, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record. RCFC 52.1; *Bannum*, 404 F.3d at 1354. Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record. *Bannum*, 404 F.3d at 1355. When a protestor claims that an agency's decision violates a statute, regulation, or procedure, the protestor must show that such alleged violation was "clear and prejudicial." *Impresa*, 238 F.3d at 1333. The Court will "interfere with the government procurement process 'only in extremely limited circumstances.'" *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (quoting *CACI, Inc.-Fed. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989)). "If the [C]ourt finds a reasonable basis for [an] agency's action, the [C]ourt should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989). The Court cannot substitute its judgment for that of an agency, even if reasonable minds could reach differing conclusions. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974).

## III. Discussion

### A. TSA Modernization Act

Plaintiff alleges that the Agency's award to Idemia violated the TSA Act and, as such, was arbitrary, capricious, an abuse of discretion and/or in violation of law. Pl.'s Reply at 6. The TSA Act provides, in relevant part, the following:

(a) In General.— The Administrator of the Transportation Security Administration shall continue to administer the PreCheck Program in accordance with section 109(a)(3) of the Aviation and Transportation Security Act (49 U.S.C. 114 note).

(b) Expansion.— Not later than 180 days after the date of enactment of the TSA Modernization Act, the Administrator shall enter into an agreement, using other transaction authority under section 114(m) of this title, with at least 2 private sector entities to increase the methods and capabilities available for the public to enroll in the PreCheck Program . . . .

(k) Assurance of Separate Program.— In carrying out this section, the Administrator shall ensure that the additional private sector application capabilities under subsections (b), (c), and (d) are undertaken in addition to any other related TSA program, initiative, or procurement, including the Universal Enrollment Services program.

(l) Expenditure of Funds.— Any Federal funds expended by the Administrator to expand PreCheck Program enrollment shall be expended in a manner that includes the requirements of this section.

49 U.S.C. § 44919. Plaintiff argues that because the TSA Act covers the expansion of the TSA PreCheck Program, and because the UES Contract anticipated a PreCheck enrollment rate of approximately 1.8 million new enrollees per year, the TSA Act applies to the UES Contract award. Pl.'s Reply at 6. Defendant argues that the TSA Act calls for an "expansion" of the TSA PreCheck Program, while the UES contract only governs the existing PreCheck Program. Def.'s Reply at 6, 12. Defendant-intervenor contends that the TSA Act directs PreCheck expansion "in addition to any other related TSA program," and that by naming the UES program, Congress specifically excluded it from coverage under the TSA Act. Def.-Int.'s Reply at 9.

It seems to this Court that at the crux of this dispute is an ambiguity in the TSA Act. Where an ambiguity exists in a statute "the court does not simply impose its own construction on the statute." *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Rather, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* In determining whether an agency's interpretation of the statute is permissible, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844.

It is undisputed that Congress adopted the TSA Act to govern TSA PreCheck expansion programs. However, the language of the statute is ambiguous to the extent that "in addition to" could be read to either specifically include or explicitly bar the UES program's coverage under the TSA Act. In light of that ambiguity, the Court must give proper deference to the Agency's understanding and application of the TSA Act. The Agency understood the phrase "in addition to" as directing the solicitation of expansion programs separate from the existing UES program. As such an understanding is neither "arbitrary, capricious, [n]or manifestly contrary to the

statute," the *Chevron* principles of agency deference prohibit this Court from setting the Agency's interpretation aside.

## B. Single Award

Plaintiff asserts that the Agency's decision to make a single award was arbitrary, capricious, an abuse of discretion, and/or in violation of law.  Pl's Reply at 14.  Specifically, plaintiff contends that, in addition to the TSA Act, Federal Acquisition Regulation 16.504(c)(1)(ii)(A)–(C) "states a preference for multiple awards for large IDIQ contracts."  Pl.'s MJAR at 26.  In Response, both the government and defendant-intervenor argue that plaintiff waived that argument by failing to timely raise it in a pre-award protest.  *See* Def's CMJAR at 26–27; Def.-Int.'s CMJAR at 24.

*Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), sets the standard for whether an argument has been waived by failing to bring a pre-award protest.  Specifically, *Blue & Gold* states that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action."  *Id.* at 1313.  Plaintiff argues that *Blue & Gold* does not apply in the case at bar because, although the TSA indicated its intention to make a single award, "the Agency never actually found that multiple awards were not possible."  Pl's Reply at 17.  Telos further contends that, until the single award was actually made, "Telos ID had no competitive injury sufficient to file a pre[-]award protest."  *Id.* at 15 (citing *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 483 (2013)).  The Court disagrees with plaintiff and finds *Blue & Gold* applicable to the present issue.

Throughout the pendency of the Solicitation, the TSA repeatedly expressed its intention to make a single IDIQ award.  On October 2, 2017, the Industry Day briefing slides for the UES solicitation stated that the TSA intended to make a single award.  AR 18 at 468.  The Solicitation itself also indicated that the TSA would only make a single award, stating that "[t]he Government intends to award a single-award IDIQ contract."  AR 40 at 2586.  When offerors submitted questions to the Agency regarding its intent to make only one award, the Agency specifically reiterated that "[t]he UES contract will remain a single IDIQ award."  AR 38.9 at 2443; *see also, e.g.*, AR 38.9 at 2413.  While the Court acknowledges that no bidder ever knows with absolute certainty whether the government will conform to its assurances, the plaintiff had more than sufficient notice of the Agency's intent.  The standard set by *Blue & Gold* required plaintiff to raise the single award issue in a pre-award protest.  *See generally Blue & Gold*, 492 F.3d 1308.  By failing to timely raise this argument in a pre-award protest, the plaintiff waived it.

## C. Permanent Injunction and Motion to Strike

As plaintiff failed to demonstrate success on the merits or show that the Agency's actions were arbitrary, capricious, or otherwise in violation of law, Telos is not entitled to injunctive relief.  As the plaintiff's Motion for Judgment on the Administrative Record is denied, the Court need not analyze the remaining factors for injunctive relief.

On June 18, 2019, after the conclusion of the parties' briefing on Cross-Motions for Judgment on the Administrative Record, plaintiff filed a Motion to Strike both defendant and defendant-intervenor's respective Replies in support of their Cross Motions for Judgment on the Administrative Record. *See generally* Plaintiff's Motion to Strike Untimely Argument. Upon careful review of the parties' arguments, the Court believes that plaintiff's objections merely expand on its previous arguments, which the Court addresses above. As such, plaintiff's Motion to Strike is hereby **DENIED**.

## IV.    Conclusion

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is **DENIED**. Defendant and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record are **GRANTED**. The Clerk is directed to enter judgment in favor of defendant and defendant-intervenor, consistent with this opinion.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith
Senior Judge